**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **JOHN HENRY HOY,** | ) | |
| | ) | **No. 08 C 04617** |
| **Plaintiff,** | ) | |
| | ) | **Magistrate Judge Susan E. Cox** |
| **v.** | ) | |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff John Henry Hoy seeks judicial review of a final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act.[1] Plaintiff seeks a judgment reversing or remanding the Commissioner's final decision, and the Commissioner seeks a judgment affirming his decision. For the reasons set forth below, plaintiff's motion is denied [dkt. 20].

PROCEDURAL HISTORY

On September 30, 2005, plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging a disability insurance period that began on August 31, 1999.[2] He alleged that severe pain in his leg and back and vision loss prevented him from working because he could not see well, sit or stand for long periods of time, carry anything, or lift

---

[1] 42 U.S.C. § 405(g).
[2] R. at 122.

anything.[3] On December 5, 2005, plaintiff's application was denied.[4] On January 10, 2006, plaintiff filed a request for reconsideration, which was denied on February 9, 2006.[5] On March 24, 2006, plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").[6] On June 13, 2007, ALJ Michael McGuire heard plaintiff's case[7] and, on June 26, 2007, ALJ McGuire issued an unfavorable decision.[8] The ALJ found that plaintiff was not disabled because he was capable of performing his past work as an unarmed security guard.[9] On July 6, 2007, plaintiff filed a request for review of the ALJ's decision with the Social Security Administration Appeals Council ("Appeals Council").[10] On July 9, 2008, the Appeals Council declined to review the ALJ's decision.[11] Therefore, the ALJ's decision stands as the final decision of the Commissioner.[12] On April 2, 2009, plaintiff filed this action.

FACTS

**A. Introduction and Medical Evidence**

This subsection is a brief review of the facts in the medical record that the ALJ reviewed at plaintiff's hearing and considered when rendering his decision. These facts provide a brief summary of plaintiff's medical history and the reasons he applied for DIB and SSI.

---

[3] R. at 128.
[4] R. at 45.
[5] R. at 54; 56.
[6] R. at 64.
[7] R. at 16.
[8] R. at 6.
[9] R. at 14.
[10] R. at 1.
[11] R. at 424.
[12] *Id.*; 20 C.F.R. §§ 404.1481, 416.981.

Plaintiff was born on May 15, 1955, making him fifty-two years old on the date the ALJ issued his final decision.[13] He completed the tenth grade and has no job training or trade skills.[14] Between 1983 and 1998, plaintiff was employed as a day laborer, a warehouse worker, a steel mill laborer, and his last position, before he stopped working, was as an unarmed security guard.[15] In his disability report dated September 30, 2005, plaintiff alleged that he stopped working on May 1, 1998 because he was in severe pain and could not perform the required work.[16]

On November 1, 1997, plaintiff was treated at John H. Stroger Hospital ("Stroger Hospital") emergency room after his girlfriend stabbed him several times in the back.[17] At that time, plaintiff reported using alcohol and crack/cocaine.[18] On April 18, 1999, plaintiff was treated at Cook County Hospital for multiple stab wounds to his abdomen, which were also inflicted by his girlfriend.[19] On the same day, Gary Chuni An, M.D., performed surgery on plaintiff's abdomen to repair an injury to his small intestine that resulted from the stab wound.[20] Seven months later, on November 19, 1999, Michele Molinary, M.D., examined plaintiff and found the abdomen to be normal.[21] In December 1999, plaintiff went to Stroger Hospital complaining of abdominal and back pain but refused treatment, denied any abdominal pain, and said he had "things to do."[22]

---

[13] R. at 122.
[14] R. at 19, 133.
[15] R. at 153-57.
[16] R. at 128.
[17] R. at 295; 303-304.
[18] R. at 311.
[19] R. at 315.
[20] *Id.*
[21] R. at 344.
[22] R. at 395.

From May 4, 2000 until May 6, 2000, plaintiff was treated at Cook County Hospital after he was struck by a car.[23] Computed axial tomography scans ("CAT scan") of his abdomen and head were both negative.[24] Plaintiff was diagnosed with back, neck, left eye, and right arm pain.[25] On June 30, 2000, plaintiff was examined at the University of Illinois at Chicago ("UIC") Hospital after he was struck by a bat.[26] His doctor reported that he smelled of alcohol.[27] Plaintiff complained of minimal left shoulder pain and right leg pain that made the leg unable to bear any weight.[28] On August 19, 2000, Valerie Dobiesz, M.D., at UIC examined plaintiff after he was involved in an altercation and she reported that he had a broken right leg.[29] On the same day, plaintiff underwent surgery to have a plate and screws inserted to support the broken leg.[30] Three days later, on April 22, 2000, plaintiff was discharged from the hospital and immediately started to drink, removed his knee immobilizer, and walked around on his leg.[31] Plaintiff then noted bleeding from the fracture site and increased pain, which appears to have prompted him to return to UIC.[32] Timothy Erickson, M.D., interviewed him and, upon examination, found no pain or swelling in plaintiff's right leg and noted that he was able to walk on his injured leg.[33] On September 8, 2000, plaintiff went to the Cook County Hospital emergency room after he was attacked by two men.[34] Plaintiff was "not intoxicated,

---

[23] R. at 231; 239.
[24] R. at 248.
[25] R. at 239; 244.
[26] R. at 351.
[27] *Id.*
[28] *Id.*
[29] R. at 349.
[30] R. at 361.
[31] R. at 354.
[32] *Id.*
[33] R. at 348.
[34] R. at 213.

but smell[ed] of alcohol" and last used cocaine 2 to 3 months earlier.[35] An x-ray of his right leg and a CAT scan of his head were both negative.[36]

On February 15, 2003, plaintiff was treated at the Cook County Hospital emergency room and was diagnosed with soft tissue swelling around his right eye.[37] On June 7, 2003, plaintiff went to the Stroger Hospital emergency room and was diagnosed with a stye on his right eye.[38] On October 17, 2003, plaintiff went to the Stroger Hospital emergency room and complained of jaw and tooth pain.[39] He was diagnosed with a fractured jaw.[40]

On February 25, 2004, plaintiff went to the Stroger Hospital emergency room and complained of back pain and a stye on his right eye.[41] He was diagnosed with a stye on his right eye.[42] On April 19, 2004, plaintiff went to the Stroger Hospital emergency room and was diagnosed with a rib fracture and contusions. [43]

On January 13, 2005, plaintiff was treated at the Stroger Hospital emergency room for a chronic toothache.[44] On September 13, 2005, plaintiff was treated at the Stroger Hospital emergency room and was referred to an eye surgery clinic to have the stye on his right eye removed,[45] was prescribed Tylenol 3 for his back pain,[46] and was instructed to return to the hospital for blood tests,

---

[35] R. at 218.
[36] R. at 213; 220.
[37] R. at 339.
[38] R. at 209-10.
[39] R. at 206.
[40] R. at 208.
[41] R. at 204.
[42] R. at 202.
[43] R. at 200.
[44] R. at 192.
[45] R. at 196.
[46] *Id.*

to stop drinking alcohol, and to return to the hospital if he desired help with alcohol rehabilitation.[47] On October 5, 2005, plaintiff had the stye on his right eye removed at the Cook County Bureau of Health Services Specialty Care Center Eye Clinic.[48]

On November 28, 2005, Scott A. Kale, M.D., J.D., saw the plaintiff for an internal medicine consultative exam that was commissioned by the Bureau for Disability Determination Services.[49] Dr. Kale opined that plaintiff had mild hypertension, back pain with a normal range of motion, a mild limp resulting from the previous fracture of his right leg, and a history of abdominal injury, which was not causing symptoms at the time of the exam.[50] Dr. Kale reported that plaintiff drank everyday but no longer used recreational drugs.[51]

On December 5, 2005, Marion Panepinto, M.D., prepared a physical residual functioning capacity assessment ("RFCA") for the Social Security Administration.[52] Dr. Panepinto concluded that plaintiff could occasionally lift or carry fifty pounds,[53] frequently lift or carry twenty-five pounds,[54] stand and walk for six hours in an eight-hour workday,[55] sit with normal breaks for six hours in an eight-hour workday,[56] push or pull without limitation,[57] and occasionally climb ramps, stairs, ladders, ropes, or scaffolds.[58] Dr. Panepinto also concluded that plaintiff had a non-severe visual impairment because, although he had limited depth perception and field of vision as a result

---

[47] R. at 195.
[48] R. at 197.
[49] R. at 180-81.
[50] Id.
[51] R. at 179.
[52] R. at 189.
[53] R. at 183.
[54] Id.
[55] Id.
[56] Id.
[57] Id.
[58] R. at 184.

of a blind left eye, he had a visual acuity of 20/25 in his right eye.[59] At the time Dr. Panepinto prepared her RFCA, no treating or examining physician's RFCA of plaintiff was filed with the Social Security Administration and has not, as of the date of this decision, been made part of the record.[60]  On February 7, 2006, Arjmand Towfig, M.D., reviewed the record and affirmed Dr. Panepinto's assessment.[61]

On January 14, 2006, plaintiff went to the Stroger Hospital emergency room complaining of chest pain and a cough that had lasted for three weeks.[62] He was diagnosed with hypertension, treated for rib inflammation, and it was noted that he had a good tolerance for exercise.[63] On October 6, 2006 plaintiff was treated at the Stroger Hospital emergency room for a stab wound to his lower left abdomen.[64] He said that he last smoked cocaine one week prior,[65] refused to divulge how much alcohol he had consumed that day,[66] and was "uncooperative, disruptive to medical care ... argumentative and loud."[67] He refused treatment and requested sutures so that "he could leave."[68] On October 24, 2006, plaintiff went to the Stroger Hospital emergency room and was diagnosed with an incomplete fracture of his right clavicle.[69]

---

[59] R. at 185.
[60] R. at 188.
[61] R. at 191.
[62] R. at 287.
[63] Id.
[64] R. at 274.
[65] R. at 255.
[66] R. at 278.
[67] R. at 284.
[68] Id.
[69] R. at 255-56.

## B. The June 13, 2007 Hearing

Plaintiff's hearing before the Social Security Administration occurred on June 13, 2007 in Chicago, Illinois.[70] Plaintiff appeared in person and was represented by his attorney, Robert Williams.[71] A Vocational Expert ("VE"), Julie Bose, also testified.[72] The ALJ began by asking Mr. Williams if he had explained the issues involved in the hearing to plaintiff and Mr. Williams responded that he had.[73] The ALJ then asked plaintiff a series of questions about his education and employment. Plaintiff explained that he had gone to school until the eleventh grade, but that he had not completed it.[74] Plaintiff next established that he worked as an unarmed night watchman who made rounds,[75] a day laborer who unloaded liquor trucks,[76] and a day laborer at a fish house.[77] Plaintiff explained that when he unloaded liquor trucks each day he was required to lift 400 boxes that weighed 20 pounds each[78] and, that when he worked at the fish house each day he lifted fish weighing 15, 20, or 30 pounds.[79] The plaintiff also explained that, since he stopped working as a security guard, he had only been able to work as a day laborer for a couple of days and has not looked for full-time work.[80]

Next, the ALJ asked plaintiff a series of questions about his medical impairments, medical treatment, and daily activities. Plaintiff explained that he is not seeing any doctors on a regular basis

---

[70] R. at 16; 95.
[71] R. at 16.
[72] *Id.*
[73] R. at 18.
[74] R. at 19.
[75] R. at 19-20.
[76] R. at 20.
[77] R. at 21.
[78] R. at 20.
[79] R. at 21.
[80] *Id.*

but that he does go to get pain pills when he needs them for his back and leg pain.[81] Later in the hearing, the ALJ asked plaintiff how he manages his pain and plaintiff replied that he takes extra-strength Tylenol and wears a back brace to relieve his pain.[82] Plaintiff told the ALJ that his back pain is constant,[83] that it varies in intensity, that it wakes him up at night[84] and that it increases when he exercises[85] or tries to pick up anything over 20 pounds.[86] Plaintiff also explained that his leg pain "comes and goes"[87] and that walking up stairs,[88] walking more than four blocks,[89] and sitting or standing for more than an hour causes the pain.[90] Plaintiff noted that he has some vision in his left eye, but that he can only see shadows and the sun bothers it.[91] Regarding his daily activities, plaintiff testified that he lives in his sister's house, is awake for 15 to 17 hours in a typical day, and babysits his sister's grandchildren or sometimes mows the grass.[92]

The ALJ then asked plaintiff why he could not return to his previous job as a security guard.[93] Plaintiff explained that he has to make rounds hourly which he cannot do because he cannot turn and look out of his eye and his pain prevents him from climbing stairs.[94] Responding to questions from his attorney, plaintiff further testified that the heaviest thing he lifted when he worked weighed over 30 pounds,[95] that any physical activity causes him pain, and that he had

---

[81] R. at 22.
[82] R. at 27.
[83] R. at 23.
[84] *Id.*
[85] *Id.*
[86] R. at 24.
[87] *Id.*
[88] R. at 25.
[89] *Id.*
[90] R. at 26.
[91] R. at 22-23.
[92] *Id.*
[93] R. at 27.
[94] R. at 27-28.
[95] R. at 29.

sporadically attempted to work as a day laborer since 2000 but was sent home when he could not complete eight hours.[96]

Finally, the ALJ and plaintiff's attorney questioned the VE, Julie Bose. She testified that an unarmed security guard's job is classified as light in physical demand, both as performed by plaintiff and as performed in the national economy,[97] and that plaintiff's day laborer positions required medium to heavy physical exertion. She also explained that the security job position is considered to be semiskilled[98] and day laborer is an unskilled position.[99] The ALJ posed a hypothetical to the VE: could an individual of plaintiff's age, education, and vocational background, who could occasionally carry or lift 20 pounds, frequently carry or lift 10 pounds, stand, walk, or sit for six hours in an eight-hour day, and frequently push or pull 20 pounds, who would be limited in depth perception and had no left peripheral vision, and who could not climb ladders, ropes , or scaffolds perform any of plaintiff's past relevant work.[100] The VE responded that this hypothetical individual could be an unarmed security guard.[101] Plaintiff's attorney asked the VE to change the hypothetical to a person who could occasionally push, pull, or lift 20 pounds.[102] The VE responded that it did not change her answer.[103]

---

[96] R. at 30.
[97] R. at 32.
[98] R. at 32.
[99] R. at 33.
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.*

### C. The ALJ's June 26, 2007 Decision

In his June 26, 2007 decision, the ALJ ruled that plaintiff was not disabled and, therefore, was not entitled to DIB.[104] The ALJ followed the five-step evaluation outlined by 20 C.F.R. 404.1520. First, at step-one, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through March 31, 2001 because his earnings record showed that he had not engaged in substantial gainful activity since August 31, 1999.[105]

At step-two, the ALJ found that plaintiff demonstrated the following severe impairments: left eye blindness, low back pain, and status-post fracture of the right leg with residual pain.[106] However, despite finding several severe impairments, the ALJ found that plaintiff did not meet or medically equal any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. First, his left eye blindness did not meet the listing because his best uncorrected vision in his right eye was 20/25; second, his spinal disorder did not meet the listing because there was no evidence of root compression, spinal arachnoiditis, or lumbar spinal stenosis and; third, his right leg fracture did not meet or equal the listing because it was fully weight bearing and plaintiff could ambulate effectively.[107]

At step-three, the ALJ determined plaintiff's Residual Functioning Capacity ("RFC"). A claimant's RFC identifies what he is capable of doing despite his limitations.[108] Based upon the entire record, the ALJ found that plaintiff had an RFC to frequently lift and carry 10 pounds, to occasionally lift and carry 20 pounds, to push and pull 20 pounds, to walk, stand, and sit for six

---

[104] R. at 14.
[105] R. at 11.
[106] *Id.*
[107] R. at 12.
[108] 20 C.F.R. § 416.945.

hours in an eight-hour day, but did not have the RFC to use ladders, ropes, and scaffolding.[109] The ALJ also found that the plaintiff's RFC limited him to performing jobs that allow for limited depth perception and no left peripheral vision.[110]

At step-four, the ALJ found that plaintiff's RFC allowed him to perform the requirements of his past relevant work.[111] The ALJ agreed with the VE's testimony at plaintiff's hearing that his RFC for light work did not preclude him from being employed as an unarmed security guard. Because the ALJ found, at step-four, that plaintiff was capable of performing his past relevant work, the ALJ did not need to proceed to step-five of the evaluation because it was determined that plaintiff was not disabled.[112]

## STANDARD OF REVIEW

The Court performs a *de novo* review of the ALJ's conclusions of law, but the ALJ's factual determinations are entitled to deference.[113] The Court will uphold the ALJ's decision when it is free from legal error and is supported by substantial evidence, "such evidence as a reasonable mind might accept as adequate to support a conclusion."[114] Where reasonable minds differ over conflicting evidence the Commissioner is responsible for determining whether a plaintiff is disabled.[115] However, the Commissioner's decision is not entitled to unlimited judicial deference. An ALJ must minimally articulate his reasons for crediting or discrediting evidence of disability.[116] The Court

---

[109] R. at 12.

[110] *Id.*

[111] R. at 14.

[112] R. at 14; 20 C.F.R. 404.1520.

[113] *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).

[114] 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002); *Clifford v. Apfel*, 227 F.3d 836, 869 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[115] *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

[116] *Clifford*, 227 F.3d at 870 (*quoting Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)).

conducts a critical review of the evidence and will not uphold the ALJ's decision when it lacks evidentiary support or an adequate discussion of the issues.[117]

## SOCIAL SECURITY REGULATIONS

The Social Security Regulations outline a sequential five-part test for determining whether or not a claimant is disabled. The ALJ must consider: first, whether the claimant is presently engaged in substantial gainful activity; second, whether the claimant has a severe impairment or combination of impairments; third, whether the claimant's impairments meet or equal an impairment listed in the regulations for being severe enough to preclude gainful activity; fourth, whether the claimant is unable to perform her past relevant work; and finally, whether the claimant is unable to perform any other work that exists in significant numbers in the national economy.[118] A finding of disability requires an affirmative answer at either the third or the fifth step, while a negative answer at any step other than three precludes a finding of disability.[119]

## ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed because he committed legal errors when he first, made an erroneous determination at step-two of the five-step sequential evaluation; second, reached an erroneous conclusion at step-three; third, made a credibility determination that was patently wrong and; fourth, erroneously determined plaintiff's RFC.

## A. The ALJ's Step-Two Determination

---

[117] *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (*quoting Clifford*, 227 F.3d at 869, *and Steele*, 290 F.3d at 940).
[118] *See* 20 C.F.R. §§ 404.1520, 416.920.
[119] *Id.*

First, plaintiff argues that the ALJ committed a legal error at step two of the analysis because he did not consider all of plaintiff's potentially "severe" impairments. The ALJ determined that plaintiff had three "severe" conditions: left eye blindness, low back pain, and status-post right leg fracture with residual pain.[120] Plaintiff argues that the ALJ should have considered all of plaintiff's impairments when he did the step-two analysis. The Commissioner counters that the ALJ did not commit legal error because substantial evidence supports his finding of three "severe" impairments. The Commissioner further asserts that the ALJ did not err at step-two because he did not ignore plaintiff's other impairments.

At step-two, an ALJ commits a *technical* legal error of law when he or she does not label a condition, which meets the requirements of the listings, as being "severe." However, the *technical* legal error is not a *reversible* legal error when "the ALJ found other severe impairments and continued with the Regulations' sequential evaluation of the claim."[121] Further, an ALJ is not required to "provide a written evaluation of every piece of evidence that is presented " but,[122] must "minimally articulate his ... justification for ... accepting specific evidence of disability."[123]

As plaintiff points out, at step-two, the ALJ did not mention all of plaintiff's impairments. Specifically, the ALJ did not find plaintiff's status-post right clavicle fracture, chest pain, eye pain, status-post jaw fracture, or right corneal abrasion to be "severe" impairments. To make his case that the ALJ's failure to mention those impairments constitutes a reversible legal error, plaintiff relies on *Keys v. Barnhart*.[124] The plaintiff in *Keys* had a history of back pain and depression.[125] He

---

[120] R. at 11.
[121] *Perez v. Barnhart*, No. 02-6876, 2003 WL 22287386, *10 (N.D. Ill. Sept. 30, 2003).
[122] *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).
[123] *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).
[124] 430 F.Supp.2d 759, 772 (N.D. Ill. 2006).
[125] *Id.* at 762-67.

alleged, and the district court agreed, that the ALJ committed reversible error by failing to follow the "special technique" (outlined in 20 C.F.R. § 404.1520a) for assessing the RFC of plaintiffs with mental impairments.[126]  Here, plaintiff did not present evidence of a mental impairment, thus, his reliance on *Keys* is misplaced.

In his opinion, the ALJ noted many of the injuries that gave rise to plaintiff's severe impairments: "multiple stab wounds ... bowel obstruction ... multiple blunt trauma ... stab wound ... [and] corneal abrasion."[127] The ALJ also explained why he found three impairments to be "severe" when he stated, "[a]ll of these impairments [left eye blindness, low back pain and right leg fracture] have more than a minimal impact on the claimant's ability to perform work-related activity."[128] Because he minimally articulated his justification for finding that the plaintiff had three "severe" impairments, based his conclusion on substantial evidence, and then continued the five-step evaluation, the ALJ did not commit a reversible legal error at step-two.[129]

**B. The ALJ's Step-Three Determination**

Plaintiff next argues that the ALJ erred at step-three when he determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[130] Plaintiff asserts that the ALJ's analysis did not build a logical bridge between the medical record and his conclusions. The Commissioner counters that the ALJ's analysis satisfies Seventh Circuit standards and that plaintiff

---

[126] *Id.* at 772.
[127] R. at 11.
[128] R. at 11.
[129] *See Perez*, No. 02-6876, 2003 WL 22287386, at *10.
[130] 20 C.F.R. § 404, Subpt. P, Appx. 1.

has failed to meet his burden of identifying evidence that the ALJ ignored, that would establish that he meets or equals a listing.

At step-three, the ALJ must determine whether medical evidence in the record supports a conclusion that claimant meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[131] When a claimant's impairments meet all of the criteria in the listing, the claimant is presumptively disabled.[132] However, when a claimant's impairment(s) do not meet the specific criteria of a listing, the claimant may show that he or she is presumptively disabled by proving that the impairment(s) medically equal a listing.[133] To do so, the claimant has the burden and must prove that "his impairment ... meet[s] *all* of the specified medical criteria."[134]

Plaintiff argues that the ALJ's step-three analysis was erroneous because "[t]he ALJ does not mention the gravely serious conditions of claimant and the terribly severe debilitation they cause him." Yet, plaintiff does not point to specific evidence to support his assertion that, contrary to the ALJ's conclusion, he meets all of the specified medical criteria of a listing. In fact, at the hearing before the ALJ, plaintiff's counsel stated that, "he does not seem to come into ... all of the criteria ... I just don't see anything ... where he's on all fours."[135] Therefore, the Court has no basis to find that the ALJ ignored evidence that would have changed his conclusion (that plaintiff was not presumptively disabled). Further, the ALJ's opinion specifically addresses why he did not find plaintiff to be presumptively disabled. First, plaintiff's "left eye blindness does not meet listing 2.02

---

[131] 20 C.F.R. §§ 404.1520(d), 416.920(d).
[132] 20 C.F.R. §§ 404.1525(a), 416.925(a).
[133] 20 C.F.R. §§ 404.1526, 416.926.
[134] *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990)(emphasis in original); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).
[135] R. at 35.

(visual acuity) because best uncorrected vision in the better eye is 20/25."[136] Second, "in the absence of compromise in the nerve root of the spine with evidence of nerve root compression, spinal archnoiditis, or spinal stenosis" he did not meet listing 1.04 (disorders of the spine.)[137] Third, plaintiff's right leg fracture did not meet listing 1.06 (fractures of the femur, tibia, pelvis or one or more of the tarsal bones) because he is now "fully weight bearing and can ambulate effectively."[138] All of the ALJ's conclusions were rooted in the medical evidence in plaintiff's record.[139] Because he articulated why, based upon the objective medical record, each of plaintiff's severe impairments did not meet all of the listings' criteria, the ALJ's analysis built a "logical bridge" from the medical evidence to his conclusions. [140]

## C. The ALJ's Credibility Determination

Next, plaintiff argues that the ALJ's credibility determination was "patently wrong" because his opinion did not sufficiently detail the inconsistencies he found between plaintiff's subjective complaints and the objective medical record. The Commissioner counters that the ALJ's credibility determination was sufficient because the medical record does not support plaintiff's allegations of disabling pain and the ALJ found plaintiff to be "partially credible."[141]

An ALJ's credibility determination will be affirmed unless it is patently wrong.[142] The ALJ's credibility determination, in accord with Social Security Ruling 96-7p, "must contain specific reasons for the findings on credibility, supported by evidence in the case record, and must be

---

[136] R. at 12.
[137] *Id.*
[138] *Id.*
[139] R at 180-181; 185.
[140] *See Lopez v. Barnhart*, 335 F.3d 535, 539 (7th Cir. 2003).
[141] R. at 13.
[142] *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004).

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[143] Further, 20 C.F.R. 404.1529(c) instructs an ALJ to consider: the claimant's daily activities, the location, duration, frequency, and intensity of claimant's pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, and effectiveness of pain medication, treatment beyond medication, and any other factors that functionally limit or restrict the claimant.[144]

In his opinion, the ALJ listed the factors of 20 C.F.R. 404.1529(c) and then applied them to plaintiff. First, the ALJ discussed the location, duration, frequency and intensity of plaintiff's pain, its aggravating factors, and plaintiff's activities. The ALJ noted that plaintiff testified that he mows the lawn.[145] He also discussed plaintiff's testimony that "weather changes and going up and down stairs all increased the pain in that [right] leg."[146] He concluded that plaintiff "was partially credible when he testified that he had constant low back pain of varying intensity ... [and] 'exercise' (moving about) increased the pain."[147] However, the ALJ also noted that, "there is nothing in the record to indicate that his pain should be of disabling nature ... Dr. Kale noted that claimant did not come to the examination with a cane ... there were no radicular pain symptoms and normal range of motion."[148]

The ALJ next considered plaintiff's pain medication and treatment. He explained that, "[h]e takes Tylenol extra strength and wears a back brace to deal with this [back] pain ... however ... he

---

[143] SSR 96-7p.
[144] 20 C.F.R. §§ 404.1529(c), 416.929(c).
[145] R. at 14.
[146] *Id.*
[147] R. at 13.
[148] R. at 13-14.

does not see a doctor regularly for this problem or his leg."[149] Then, the ALJ analyzed plaintiff's functional restrictions noting that, "[h]e testified he can walk four blocks without stopping, sit for one hour, and stand for one hour. Overall, I find nothing in the record that would preclude finding he is capable of light exertion."[150]

In his analysis of the plaintiff's subjective allegations of disabling pain, the ALJ considered each factor listed in 20 C.F.R. 404.1529(c) and supported his analysis with plaintiff's testimony and the objective medical record.[151] It cannot, therefore, be said that the ALJ's credibility determination was patently wrong.[152]

## D. The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC determination, that plaintiff has the RFC for light work, was erroneous because the ALJ did not consider how several of plaintiff's impairments would affect his ability to work. Plaintiff asserts that the ALJ only briefly summarized plaintiff's testimony, did not include an analysis of the combined effect of all of plaintiff's impairments, and did not discuss plaintiff's hypertension. The Commissioner contends, in contrast, that substantial evidence supports the ALJ's RFC finding and that plaintiff is asking the Court to perform a *de novo* review of the medical record and make its own RFC determination.

A claimant's contention that there is record evidence that contradicts an ALJ's RFC assessment "fall[s] far short of undermining the ALJ's conclusions"[153] because, when reasonable

---

[149] R. at 13-14.

[150] *Id.*

[151] *Id.*

[152] *See Skarbek*, 390 F.3d at 505 (explaining that "[t]his court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his finding.")

[153] *Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005).

minds could differ about the severity of a claimant's condition, courts defer to the ALJ's RFC determination.[154] Further, "[w]here the ALJ does not reject countervailing evidence, he need not articulate his reasons for accepting the medical opinions in the record. The ultimate question is whether the ALJ's decision is sufficiently specific to facilitate meaningful review."[155]

The ALJ's RFC determination was not erroneous. First, the ALJ had no reason to consider plaintiff's hypertension when he determined plaintiff's RFC. Plaintiff's argument- that his hypertension causes fatigue and exacerbates his other impairments- is not supported by any examining physician on record. Second, as already discussed in the previous section of this opinion, the ALJ conducted a thorough analysis of plaintiff's subjective complaints regarding his pain and functional limitations.[156] Third, in his opinion, the ALJ discussed plaintiff's many impairments, noting that "[g]iven the claimant's multiple trauma it is not surprising that he might experience back pain ... claimant was treated for multiple stab wounds ... for bowel obstruction ... and corneal abrasion."

Further, the ALJ's RFC determination was supported by substantial evidence and the medical opinions in the record. In the RFCA Dr. Panepinto completed in 2005, she concluded that plaintiff could occasionally lift or carry fifty pounds,[157] frequently lift or carry twenty-five pounds,[158] stand and walk for six hours in an eight-hour workday,[159] sit with normal breaks for six hours in an eight-hour workday,[160] push or pull without limitation,[161] and occasionally climb ramps, stairs,

---

[154] *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).
[155] *Fischer v. Barnhart*, 2005 WL 352451, at *6 (7th Cir. Feb. 11, 2005).
[156] R. at 13-14.
[157] R. at 183.
[158] *Id.*
[159] *Id.*
[160] *Id.*
[161] *Id.*

ladders, ropes, or scaffolds.[162] Instead of adopting Dr. Panepinto's RFCA at face-value, the ALJ took

plaintiff's subjective allegations into account and found that plaintiff had more functional limitations

than those observed by Dr. Panepinto. Plaintiff testified that he could not perform the work of a day

laborer, which requires a medium or heavy level of physical exertion, for an eight-hour day.

Accordingly, the ALJ concluded that the plaintiff only had the RFC to work six hours of an eight-

hour day at a light exertional level occupation. The ALJ's RFC also encompassed plaintiff's

subjective testimony that he has trouble seeing out of his left eye and cannot climb due to his leg

pain.[163]

Finally, plaintiff argues that at his hearing the ALJ posed an improper hypothetical to the

VE because "the VE did not assume the hypothetical employee's mental status, namely, the inability

to focus or concentrate and the ability to be free from excruciating pain." However, plaintiff did not

testify, and his physicians did not report, that his pain limited his ability to concentrate. In fact,

plaintiff testified that he could drive a car for up to an hour at a time.[164] Therefore, the ALJ had no

reason to include inability to concentrate in the hypothetical he posed to the VE.[165] Because the ALJ

accurately described plaintiff's limitations in accord with his RFC, the hypothetical was proper.[166]

CONCLUSION

---

[162] R. at 184.

[163] R. at 12, 28.

[164] R. at 34.

[165] *See Donahue v. Barnhart,* 279 F.3d 441, 444 (7th Cir. 2002) (explaining that claimant's argument that the ALJ posed an improper hypothetical when he did not list claimant's difficulty concentrating was "picayune.")

[166] *See Id.*

For the reasons set forth above, the Court finds that the ALJ's June 26, 2007 decision is supported by substantial evidence. Accordingly, the Court denies plaintiff's Motion for Summary Judgment [dkt. 20].

**IT IS SO ORDERED.**

**ENTERED: December 7, 2009**

_____

**Susan E. Cox**
**UNITED STATES MAGISTRATE JUDGE**